FILED

2006 JUN 29  PM 3: 54

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

3

ISSUED TO ATTORNEY

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Tammy J. Brown, Individually and as<br>guardian of Jessica Brown Keith<br>401 Platt Street<br>Toledo, Ohio  43605 | :  Case No. **1:06CV40132**<br>:  **JUDGE DAVID A. KATZ**<br>: |
| and | :  **COMPLAINT WITH DEMAND FOR**<br>   **JURY TRIAL ENDORSED HEREON** |
| | : |
| David Brown<br>401 Platt Street<br>Toledo, Ohio 43605 | : |
| | : |
| and | : |
| | : |
| Glenn A. Keith, Individually and as father<br>and natural guardian of C.K., a minor<br>405 Platt Street<br>Toledo, Ohio 43605 | :<br><br>: |
| Plaintiffs | : |
| vs. | : |
| | : |
| Ortho-McNeil Pharmaceuticals, Inc.<br>1000 U. S. Highway 2002<br>Raritan, New Jersey  08869-0602 | : |
| | : |
| and | : |

Johnson & Johnson, Inc.
One Johnson & Johnson Plaza                 :
New Brunswick, New Jersey 08933

                                       :

   and

                                       :

Johnson & Johnson Pharmaceuticals
Research and Development                     :
920 Rte. 202 South
Raritan, New Jersey 08869-1420              :

        Defendants                          :

****************************************************************************

## PARTIES AND JURISDICTION

1.     Jessica Brown Keith is a resident of Toledo, Lucas County, Ohio.

2.     Plaintiff Tammy J. Brown is the mother of Jessica Keith and a resident of Toledo,

Lucas County, Ohio.

3.     Tammy Brown is the guardian of Jessica Keith by virtue of having been appointed

on March 15, 2006, by the Probate Court of Lucas County, in Probate Case No. 2006GDN0147,

lodged in the Probate Court of Lucas County, Ohio.

4.     Plaintiff David Brown is the father of Jessica Keith and a resident of Toledo,

Lucas County, Ohio.

5.     Plaintiff Glenn A. Keith is the husband of Jessica Keith and a resident of Toledo,

Lucas County, Ohio.

6.     Plaintiff C.K. is the minor son of Jessica and Glenn Keith and a resident of

Toledo, Lucas County, Ohio.

7.     Plaintiffs allege an amount in controversy in excess of $75,000, exclusive of

interest and costs.

2

8.    Defendant Ortho-McNeil Pharmaceuticals, Inc., is a Delaware corporation with its principal place of business in Raritan, New Jersey. Defendant Ortho-McNeil is a wholly-owned subsidiary and division of defendant Johnson & Johnson located in New Brunswick, New Jersey.

9.    Defendant Ortho-McNeil was engaged in the business of designing, licensing, manufacturing, distributing, marketing, selling, or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the prescription drug Ortho-Evra contraceptive patch.

10.    Defendant Johnson & Johnson, Inc. ("Johnson & Johnson") is a New Jersey corporation with its principal place of business in New Brunswick, New Jersey. Defendant Johnson & Johnson is the parent company of defendant Ortho-McNeil, and defendant Johnson & Johnson Pharmaceuticals Research & Development, LLC.

11.    Defendant Johnson & Johnson was engaged in the business of designing, licensing, manufacturing, distributing, marketing, selling, or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the prescription drug Ortho-Evra contraceptive patch.

12.    Defendant Johnson & Johnson Pharmaceutical Research & Development, LLC ("Johnson & Johnson Pharmaceutical R & D") is a New Jersey corporation with its principal place of business in Raritan, New Jersey. Defendant Johnson & Johnson Pharmaceutical R & D is a subsidiary of Johnson & Johnson and was previously known as R. W. Johnson Pharmaceutical Research Institute.

13.    Defendant Johnson & Johnson Pharmaceutical R & D was engaged in the business of designing, licensing, manufacturing, distributing, marketing, selling, or introducing into interstate commerce, either directly or indirectly through third parties or related entities, the

3

prescription drug Ortho-Evra contraceptive patch.

14. This Court has jurisdiction over this action under 28 U.S.C. §1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of costs and interest.

15. Venue in this district is appropriate under 28 U.S.C. §1391 because a substantial part of the events giving rise to this cause of action occurred in the district, as Jessica Keith was prescribed and used Ortho-Evra in this district, and because Jessica Keith had at all relevant times resided in this district.

## FACTUAL BACKGROUND

16. Jessica Keith was born on September 4, 1983.

17. On or about October 27, 2005, Jessica Keith suffered a massive blood clot as a direct result of her use of the Ortho-Evra patch. Ms. Keith then also suffered a stroke.

18. Following the onset of her stroke, Ms. Keith received medical care and treatment at various medical facilities. To date, she resides at the Arbors of Oregon nursing home in Oregon, Ohio.

19. Defendants marketed Ortho-Evra as the first and only once-a-week birth-control patch.

20. Defendants marketed Ortho-Evra as providing the same efficiency as birth-control pills in preventing pregnancy, but with more convenience than birth-control pills because it was worn on the skin for three consecutive weeks, with the fourth week being patch free.

21. Defendants claimed that the Ortho-Evra patch helped to prevent pregnancy the same way birth-control pills did by preventing ovulation, by thickening the cervical mucus, and by changing the endometrium to reduce the chance of implantation.

4

22.    Unlike birth-control pills, the Ortho-Evra patch was transdermal, meaning that continuous levels of the hormones norelgestromin and ethyl estradiol (progestin and estrogen respectively) were delivered through the skin into the bloodstream.

23.    In response to the question of whether there were any side effects associated with Ortho-Evra, the defendants claimed that the most frequent adverse event leading to discontinuation included nausea or vomiting, application-site reaction, breast symptoms, headache, and emotional lability.

24.    Defendants failed to warn consumers, including Jessica Keith, that the transdermal patch was more likely to cause blood clots and thrombosis than oral contraceptives.

25.    Upon information and belief, adverse event records of the Food and Drug Administration show that a significantly higher number of women using the Ortho-Evra patch reportedly suffered injury or death due to blood clots, compared to women using oral contraception.

26.    In or about November 2005, the Food and Drug Administration and the manufacturers of Ortho-Evra concluded that users of the patch were exposed to 60% more estrogen than users of the pill, and that increased exposure to estrogen may have increased the risks of blood clots.

27.    As a result of defendants' claims regarding the safety and efficacy of Ortho-Evra, Jessica Keith began using the patch on or about October 13, 2005, as directed, and continued using the patch until October 27, 2005.

28.    On the morning of October 27, 2005, at approximately 7:30 a.m., Jessica Keith was taken to St. Charles Hospital after experiencing nausea, vomiting, abdominal pains, and lethargy.

5

29.     On October 27, 2005, while at St. Charles Hospital, Jessica Keith became more lethargic and obtunded; she was also experiencing spasms of the arms and legs.

30.     On October 27, 2005, at approximately 11:45, Jessica Keith was transferred to Medical University of Ohio in Toledo, Ohio ("MUO") for admission into its ICU for further evaluation.

31.     On October 28, 2005, at approximately 12:00 a.m., Jessica Keith arrived at MUO, at which time she was intubated. Upon arrival, she was principally diagnosed with a diffuse cerebral venous sinus thrombosis.

32.     On the evening of October 28, 2005, Jessica Keith was transferred via Life Flight for further evaluation, care, and treatment to the Cleveland Clinic neurological ICU in Cleveland, Ohio.

33.     At the Cleveland Clinic, Jessica Keith was diagnosed with, among other things, dural venous sinus thrombosis. Ms. Keith remained at the Cleveland Clinic until November 22, 2005.

34.     On November 22, 2005, Jessica Keith was transferred from the Cleveland Clinic to the St. Francis Health Care Center in Greensprings, Ohio, for rehabilitation. Ms. Keith remained at St. Francis until March 8, 2006.

35.     On March 8, 2006, Jessica Keith was transferred to the Arbors of Oregon nursing home in Oregon, Ohio, where she currently remains.

36.     Before October 2005, defendants knew or should have known that the use of the birth-control patch, Ortho-Evra, created a higher risk of blood clots, deep vein thrombosis, and pulmonary embolism than oral contraceptives, and that, when taken as directed, such use was unreasonably dangerous to consumers, including Jessica Keith.

6

37. Therefore, at the time Jessica Keith used Ortho-Evra in October 2005, defendants knew or should have known that the use of Ortho-Evra created an increased risk to consumers of serious personal injury, including blood clots, deep vein thrombosis, pulmonary embolism, stroke, and death.

38. Despite the fact that defendants knew or should have known of the serious health risks posed by Ortho-Evra, defendants failed to warn Jessica Keith of such risks before she used the product.

39. Had Jessica Keith known of the risks and dangers associated with Ortho-Evra, she would not have used the Ortho-Evra patch, and would not have suffered the thrombosis that led to her injuries.

40. As a direct and proximate result of Jessica Keith's use of Ortho-Evra, she suffered significant harm, conscious pain and suffering, physical injury, and bodily impairment including, but not limited to, suffering from a blood clot, which resulted in her injuries.

41. Further, as a direct and proximate result of Jessica Keith's use of Ortho-Evra, she suffered significant mental anguish and emotional distress and was in fear for her very life.

42. Jessica Keith incurred medical expenses and other economic harm, including lost earnings, as a direct and proximate result of her use of Ortho-Evra.

## FIRST CLAIM FOR RELIEF
## STRICT LIABILITY

43. Plaintiffs hereby incorporate by reference paragraphs 1 through 42 above of this Complaint and further allege as follows:

44. Defendants were the manufacturer, designer, distribution, seller, or supplier of Ortho-Evra.

7

45.     The Ortho-Evra manufactured, designed, distributed, sold, or supplied into the stream of commerce by the defendants was defective in its manufacture and construction when it left the hands of defendants in that it deviated from product specifications, posing serious risk of injury and death.

46.     The Ortho-Evra manufactured and supplied by defendants was defective in design or formulation in that when it left the hands of the defendants the foreseeable risks of the product exceeded the benefits associated with its design or formulation.

47.     Alternatively, the Ortho-Evra manufactured and supplied by defendants was defective in design or formulation in that when it left the hands of the defendants it was more dangerous than an ordinary consumer would expect.

48.     The foreseeable risks associated with the design or formulation of the Ortho-Evra birth-control patch included, but were not limited to, the fact that the design or formulation of Ortho-Evra was more dangerous than a reasonably prudent person would expect when used in an intended and reasonably foreseeable manner.

49.     Further, the Ortho-Evra manufactured and supplied by the defendants was defective due to inadequate warning or instruction because defendants knew or should have known that the product created significant risks of serious bodily injury and death to consumers and the defendants failed to adequately warn of such risks.

50.     The Ortho-Evra manufactured and supplied by defendants was defective due to inadequate post-marketing warning or instruction because after the defendants knew or should have known of the risk of serious bodily injury or death from the use of Ortho-Evra, defendants failed to provide an adequate warning to consumers of the product despite defendants knowing the product could cause serious injury and death.

8

51.     Furthermore, the Ortho-Evra manufactured and supplied by defendants was defective in that when it left the hands of the defendants it did not conform to representations made by the defendants concerning the product.

52.     As a direct and proximate result of Jessica Keith's use of Ortho-Evra as manufactured, designed, sold, supplied, marketed, or introduced into the stream of commerce by defendants, Jessica Keith suffered harm, pain and suffering, damages, and economic loss.

53.     Defendants' actions and omissions demonstrate a flagrant disregard for human life warranting the imposition of punitive damages.

54.     As a direct and proximate result of the acts or omissions of the defendants, Jessica Keith has sustained serious and permanent personal injuries including, but not limited to, a massive blood clot and stroke. She has required medical care and incurred hospital and medical expenses; she has endured great pain, suffering, mental anguish, and emotional distress; she has suffered a loss of income; she has sustained a loss of the enjoyment of life; and her activities of daily living and the quality of her life have been severely diminished, all to her monetary damage.

55.     As a direct and proximate result of the acts or omissions of the defendants, Jessica Keith believes her injuries are permanent in nature, and that she will continue to endure great pain, suffering, mental anguish, and severe emotional distress; and that in the future she will be required to receive hospital and medical care and will incur additional hospital and medical-care expenses; that she has suffered a permanently diminished earning capacity; that she has suffered a permanent loss of the enjoyment of life; and that her ability to carry on the activities of daily living and her quality of life have been permanently impaired, all to her monetary damage.

WHEREFORE, plaintiffs pray for relief as follows:

a.      compensatory and punitive damages in an amount equal to or greater than the
        minimum amount required for subject-matter jurisdiction in this Court;

b.      attorneys' fees, expenses, and costs related to prosecution of this suit, as permitted
        by Fed.R.Civ.P. 54(d);

c.      interest as permitted by law or as required by equity; and

d.      any other relief to which the plaintiff is entitled, as permitted by Fed.R.Civ.P.
        54(c).

## SECOND CLAIM FOR RELIEF
## NEGLIGENCE

56.     Plaintiffs hereby incorporate by reference paragraphs 1 through 55 of this
Complaint and further allege as follows:

57.     Defendants had a duty to exercise reasonable care in the design, manufacture,
sale, or distribution of Ortho-Evra into the stream of commerce, including a duty to assure that
the product did not pose a significantly increased risk of bodily injury and adverse events,
including blood clots and stroke.

58.     Defendants failed to exercise ordinary care in the design, formulation,
manufacture, sale, marketing, testing, quality assurance, quality control, labeling, promotion, or
distribution of Ortho-Evra into the stream of commerce in that defendants knew or should have
known that the product caused such significant bodily harm or death and was not safe for use by
consumers.

59.     Defendants also failed to exercise ordinary care in the labeling of Ortho-Evra and
failed to issue adequate warnings of the risk of serious bodily harm and death due to the use of

10

Ortho-Evra.

60.     Despite the fact that defendants knew or should have known that Ortho-Evra posed a serious risk of bodily harm to consumers, defendants continued to manufacture and market Ortho-Evra for use by consumers like Jessica Keith.

61.     As a direct and proximate result of defendants' negligence, Jessica Keith suffered harm, pain and suffering, damages, and economic loss.

62.     Defendants' conduct as described above, including but not limited to its failure to adequately test Ortho-Evra, to provide adequate warnings, and its continued manufacture, sale, and marketing of the product when aware of the serious health risks it created, evidences a flagrant disregard of human life so as to warrant the imposition of punitive damages.

63.     As a direct and proximate result of the acts or omissions of the defendants, Jessica Keith has sustained serious and permanent personal injuries including, but not limited to, a massive blood clot and stroke.  She has required medical care and incurred hospital and medical expenses; she has endured great pain, suffering, mental anguish, and emotional distress; she has suffered a loss of income; she has sustained a loss of the enjoyment of life; and her activities of daily living and the quality of her life have been severely diminished, all to her monetary damage.

64.     As a direct and proximate result of the acts or omissions of the defendants, Jessica Keith believes that her injuries are permanent in nature, and that she will continue to endure great pain, suffering, mental anguish, and severe emotional distress; that in the future she will be required to receive hospital and medical care and will incur additional hospital and medical-care expenses; that she has suffered a permanently diminished earning capacity; that she has suffered a permanent loss of the enjoyment of life; and that her ability to carry on the activities of daily

11

living and her quality of life have been permanently impaired, all to her monetary damage.

WHEREFORE, plaintiffs pray for relief as follows:

a.      compensatory and punitive damages in an amount equal to or greater than the

minimum amount required for subject-matter jurisdiction in this Court;

b.      attorneys' fees, expenses, and costs related to prosecution of this suit, as permitted

by Fed.R.Civ.P. 54(d);

c.      interest as permitted by law or as required by equity; and

d.      any other relief to which the plaintiff is entitled, as permitted by Fed.R.Civ.P.

54(c).

## THIRD CLAIM FOR RELIEF
## BREACH OF EXPRESS WARRANTY

65.     Plaintiffs hereby incorporate by reference paragraphs 1 through 64 of this

Complaint and further allege as follows:

66.     Defendants expressly warranted that Ortho-Evra was a safe and effective

prescription contraceptive.

67.     The Ortho-Evra manufactured and sold by defendants did not conform to these

express representations because it caused serious harm to consumers when taken at

recommended dosages.

68.     As a direct and proximate result of defendants' breach of warranty, Jessica Keith

suffered harm, pain and suffering, damages, and economic loss.

69.     As direct and proximate result of the acts or omissions of the defendants, Jessica

Keith has sustained serious and permanent personal injuries including, but not limited to, a

massive blood clot and stroke.  She has required medical care and incurred hospital and medical

12

expenses; she has endured great pain, suffering, mental anguish, and emotional distress; she has suffered a loss of income; she has sustained a loss of the enjoyment of life; and her activities of daily living and the quality of her life have been severely diminished, all to her monetary damage.

70.     As a direct and proximate result of the acts or omissions of the defendants, Jessica Keith believes that her injuries are permanent in nature, and that she will continue to endure great pain, suffering, mental anguish, and severe emotional distress; and that in the future she will be required to receive hospital and medical care and will incur additional hospital and medical-care expenses; that she has suffered a permanently diminished earning capacity; that she has suffered a permanent loss of the enjoyment of life; and that her ability to carry on the activities of daily living and her quality of life have been permanently impaired, all to her monetary damage.

WHEREFORE, plaintiffs pray for relief as follows:

a.     compensatory and punitive damages in an amount equal to or greater than the minimum amount required for subject-matter jurisdiction in this Court;

b.     attorneys' fees, expenses, and costs related to prosecution of this suit, as permitted by Fed.R.Civ.P. 54(d);

c.     interest as permitted by law or as required by equity; and

d.     any other relief to which the plaintiff is entitled, as permitted by Fed.R.Civ.P. 54(c).

## FOURTH CLAIM FOR RELIEF
## BREACH OF IMPLIED WARRANTY

71.     Plaintiffs hereby incorporate by reference paragraphs 1 through 70 above of this Complaint and further allege as follows:

13

72. At the time defendants designed, manufactured, marketed, sold, or distributed Ortho-Evra for use by decedent, defendants knew the use for which Ortho-Evra was intended and impliedly warranted the product to be of merchantable quality and fit for sale for such use.

73. Jessica Keith reasonably relied upon the skill and judgment of defendants as to whether Ortho-Evra was of merchantable quality and fit for sale for its intended use, and relied upon defendants' implied warranties as to such matters.

74. Contrary to such implied warranty, Ortho-Evra was not of merchantable quality nor fit for sale for its intended purpose, because the product was unreasonably dangerous as described above.

75. As a direct and proximate result of defendants' breach of implied warranty, Jessica Keith suffered harm, pain and suffering, damages, and economic loss.

76. As a direct and proximate result of the acts or omissions of the defendants, Jessica Keith has sustained serious and permanent personal injuries including, but not limited to, a massive blood clot and stroke. She has required medical care and incurred hospital and medical expenses; she has endured great pain, suffering, mental anguish, and emotional distress; she has suffered a loss of income; she has sustained a loss of the enjoyment of life; and her activities of daily living and the quality of her life have been severely diminished, all to her monetary damage.

77. As a direct and proximate result of the acts or omissions of the defendants, Jessica Keith believes that her injuries are permanent in nature, and that she will continue to endure great pain, suffering, mental anguish, and severe emotional distress; and that in the future she will be required to receive hospital and medical care and will incur additional hospital and medical care expenses; that she has suffered a permanently diminished earning capacity; that she has suffered

14

a permanent loss of the enjoyment of life; and that her ability to carry on the activities of daily living and her quality of life have been permanently impaired, all to her monetary damage.

WHEREFORE, plaintiffs pray for relief as follows:

a.     compensatory and punitive damages in an amount equal to or greater than the minimum amount required for subject-matter jurisdiction in this Court;

b.     attorneys' fees, expenses, and costs related to prosecution of this suit, as permitted by Fed.R.Civ.P. 54(d);

c.     interest as permitted by law or as required by equity; and

d.     any other relief to which the plaintiff is entitled, as permitted by Fed.R.Civ.P. 54(c).

## FIFTH CLAIM FOR RELIEF
## NEGLIGENT MISREPRESENTATION AND FRAUD

78.    Plaintiffs hereby incorporate by reference paragraphs 1 through 77 of this Complaint and further allege as follows:

79.    Defendants had actual knowledge based upon studies, published reports, and clinical experience that its product Ortho-Evra created an unreasonable risk of serious bodily injury and death to consumers, or should have known such information.

80.    Defendants intentionally or negligently omitted this information in the product labeling, promotional material, and advertisements and instead labeled, promoted, and advertised Ortho-Evra as safe in order to avoid losses and sustain profits in its sales of Ortho-Evra to consumers.

81.    Jessica Keith reasonably relied upon defendants' fraudulent or negligent actions and omissions in its labeling, promotion, and advertising concerning the serious risks posed by

Ortho-Evra. Jessica Keith reasonably relied upon defendants' representations that Ortho-Evra was safe for human use and that defendants' labeling, promotions, and advertising fully described all known risks of the product.

82. As a direct and proximate result of defendants' fraudulent or negligent actions and omissions, decedent used Ortho-Evra and suffered grievous bodily harm, pain and suffering, damages, and economic loss.

83. Defendants' actions and omissions as identified in this Complaint demonstrate flagrant disregard for human life, so as to warrant the imposition of punitive damages.

84. As a direct and proximate result of the acts or omissions of the defendants, Jessica Keith has sustained serious and permanent personal injuries including, but not limited to, a massive blood clot and stroke. She has required medical care and incurred hospital and medical expenses; she has endured great pain, suffering, mental anguish, and emotional distress; she has suffered a loss of income; she has sustained a loss of the enjoyment of life; and her activities of daily living and the quality of her life have been severely diminished, all to her monetary damage.

85. As a direct and proximate result of the acts or omissions of the defendants, Jessica Keith believes that her injuries are permanent in nature, and that she will continue to endure great pain, suffering, mental anguish, and severe emotional distress; and that in the future she will be required to receive hospital and medical care and will incur additional hospital and medical-care expenses; that she has suffered a permanently diminished earning capacity; that she has suffered a permanent loss of the enjoyment of life; and that her ability to carry on the activities of daily living and her quality of life have been permanently impaired, all to her monetary damage.

WHEREFORE, plaintiffs pray for relief as follows:

16

a.   compensatory and punitive damages in an amount equal to or greater than the

minimum amount required for subject-matter jurisdiction in this Court;

b.   attorneys' fees, expenses, and costs related to prosecution of this suit, as permitted

by Fed.R.Civ.P. 54(d);

c.   interest as permitted by law or as required by equity; and

d.   any other relief to which the plaintiff is entitled, as permitted by Fed.R.Civ.P.

54(c).

## SIXTH CLAIM FOR RELIEF
## LOSS OF CONSORTIUM

86.   Plaintiffs hereby incorporate paragraphs 1 through 85 of this Complaint and

further allege as follows:

87.   At all times relevant to this Complaint, plaintiff Tammy Brown was and is the

mother of Jessica Keith.

88.   As a direct and proximate result of the acts or omissions of the defendants, and

the injuries caused thereby to Jessica Keith, Tammy Brown has suffered a loss of her daughter's

society, companionship, consortium, and services.  Further, due to the permanency of the injuries

sustained by Jessica Keith, Tammy Brown will suffer a permanent and future loss of her

daughter's society, companionship, consortium, and services, all to her monetary damage.

WHEREFORE, plaintiff Tammy Brown prays for relief as follows:

a.   compensatory and punitive damages in an amount equal to or greater than the

minimum amount required for subject-matter jurisdiction in this Court;

b.   attorneys' fees, expenses, and costs related to prosecution of this suit, as permitted

by Fed.R.Civ.P. 54(d);

17

c.    interest as permitted by law or as required by equity; and

d.    any other relief to which the plaintiff is entitled, as permitted by Fed.R.Civ.P.
      54(c).

## SEVENTH CLAIM FOR RELIEF
## LOSS OF CONSORTIUM

89.    Plaintiffs hereby incorporate paragraphs 1 through 88 of this Complaint and
further allege as follows:

90.    At all times relevant to this Complaint, plaintiff David Brown was and is the
father of Jessica Keith.

91.    As a direct and proximate result of the acts or omissions of the defendants, and
the injuries caused thereby to Jessica Keith, David Brown has suffered a loss of his daughter's
society, companionship, consortium, and services. Further, due to the permanency of the injuries
sustained by Jessica Keith, David Brown will suffer a permanent and future loss of his daughter's
society, companionship, consortium, and services, all to his monetary damage.

WHEREFORE, plaintiff David Brown prays for relief as follows:

a.    compensatory and punitive damages in an amount equal to or greater than the
      minimum amount required for subject-matter jurisdiction in this Court;

b.    attorneys' fees, expenses, and costs related to prosecution of this suit, as permitted
      by Fed.R.Civ.P. 54(d);

c.    interest as permitted by law or as required by equity; and

d.    any other relief to which the plaintiff is entitled, as permitted by Fed.R.Civ.P.
      54(c).

18

## EIGHTH CLAIM FOR RELIEF
## LOSS OF CONSORTIUM

92.     Plaintiffs hereby incorporate paragraphs 1 through 91 of this Complaint and further allege as follows:

93.     At all times relevant to this Complaint, plaintiff Glenn Keith was and is the husband of Jessica Keith.

94.     As a direct and proximate result of the acts or omissions of the defendants, and the injuries caused thereby to Jessica Keith, Glenn Keith has suffered a loss of his wife's society, companionship, consortium, and services. Further, due to the permanency of the injuries sustained by Jessica Keith, Glenn Keith will suffer a permanent and future loss of his wife's society, companionship, consortium, and services, all to his monetary damage.

WHEREFORE, plaintiff Glenn Keith prays for relief as follows:

a.      compensatory and punitive damages in an amount equal to or greater than the minimum amount required for subject-matter jurisdiction in this Court;

b.      attorneys' fees, expenses, and costs related to prosecution of this suit, as permitted by Fed.R.Civ.P. 54(d);

c.      interest as permitted by law or as required by equity; and

d.      any other relief to which the plaintiff is entitled, as permitted by Fed.R.Civ.P. 54(c).

## NINTH CLAIM FOR RELIEF
## LOSS OF CONSORTIUM

95.     Plaintiffs hereby incorporate paragraphs 1 through 94 of this Complaint and further allege as follows:

96.     At all times relevant to this Complaint, plaintiff C. K. was and is the son of

19

Jessica Keith.

97.     As a direct and proximate result of the acts or omissions of the defendants, and the injuries caused thereby to Jessica Keith, C. K. has suffered a loss of his mother's society, companionship, consortium, and services. Further, due to the permanency of the injuries sustained by Jessica Keith, C. K. will suffer a permanent and future loss of his mother's society, companionship, consortium, and services, all to his monetary damage.

WHEREFORE, plaintiff C. K. prays for relief as follows:

a.      compensatory and punitive damages in an amount equal to or greater than the minimum amount required for subject-matter jurisdiction in this Court;

b.      attorneys' fees, expenses, and costs related to prosecution of this suit, as permitted by Fed.R.Civ.P. 54(d);

c.      interest as permitted by law or as required by equity; and

d.      any other relief to which the plaintiff is entitled, as permitted by Fed.R.Civ.P. 54(c).

## TENTH CLAIM FOR RELIEF
## DECLARATORY JUDGMENT

98.     Plaintiffs also seek a declaratory judgment under R.C. 2721.01 et seq., and especially R.C. 2721.03 and 2721.12.

99.     This Tenth Claim for Relief is brought as permitted by 28 U.S.C. §§ 2201 and 2202.

100.    Plaintiffs Tammy J. Brown, individually and as Guardian of Jessica Brown Keith, David Brown, and Glenn A. Keith, individually and as father and natural guardian of C. K., a minor, allege that the amendments to the Ohio Revised Code made by Am.Sub. S.B. 281 and Am.Sub. S.B. 120, including, but not necessarily limited to, the amendments to sections

20

2305.113, 2307.22, 2307.23, 2315.32 to .36, 2323.41 to .43, 2323.55, 2711.22, and 2743.43, are unconstitutional, as they are unreasonable and arbitrary; do not bear a real and substantial relation to public health or welfare; and are an improper legislative usurpation of judicial power and an intrusion upon the exclusive authority of the judiciary. Further, the amendments violate additional rights guaranteed to plaintiffs by the United States and Ohio constitutions, including, but not limited to, the right to due process, the right to equal protection under the laws, the right to trial by jury as guaranteed by §5, Article I of the Ohio Constitution, the right to a remedy and open courts provision of §16, Article I of the Ohio Constitution, and the right to freedom of contract as guaranteed by §28, Article II of the Ohio Constitution.

101.    An actual controversy of a justiciable nature currently exits between the plaintiffs and the defendants concerning the constitutionality of the Acts identified. This controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.

102.    A copy of this Complaint will be served upon Ohio Attorney General Jim Petro at his office located at State Office Tower, 30 East Broad Street, 17th Floor, Columbus, Ohio 43215-4320.

WHEREFORE, plaintiffs pray for a declaration that the delineated amendments to the Ohio Revised Code are unconstitutional in their entirety.

> **TAMMY J. BROWN**, Individually and as
> Guardian of **JESSICA BROWN KEITH;**
> **DAVID BROWN; GLENN A. KEITH,**
> Individually and as Father and Natural Guardian
> of **C.K.,** a minor
>
> By _____
>      Steven P. Collier (0031113)
>      scollier@cjc-law.com

21

By _____

Janine T. Avila (0055853)
javila@cjc-law.com
CONNELLY, JACKSON & COLLIER LLP
405 Madison Avenue, Suite 1600
Toledo, Ohio 43604
Telephone: 419-243-2100
Fax: 419-243-7119
Counsel for Plaintiff

## **JURY DEMAND**

Plaintiffs demand a trial by jury in the above-captioned case.

By _____
Counsel for Plaintiffs

H:\Cases\Keith\Jessica\Pleading\complaint.doc

22